# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 11–60(1) (DWF) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Terry Lamar Roberts, Jr., | |
| Defendant. | |

Elizabeth R. Duel, Ryan Garry, Attorney, LLC, 330 South Seventh Street, Suite 2350, Minneapolis MN 55402, and Daniel S. Adkins, North Star Criminal Defense, 207 Dacotah Building, 370 Selby Avenue, St. Paul MN 55102 (for Defendant);

Thomas M. Hollenhorst, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis MN 55415 (for United States).

## INTRODUCTION

This matter is before the Court on Defendant Terry Lamar Roberts' Motion to Modify Sentence of Imprisonment.  (Doc. No. 149.)  The Government opposes.  For the reasons discussed below, the Court grants Roberts' Motion.

## BACKGROUND

On February 15, 2011, Roberts was charged with one count of interference with commerce by robbery in violation of 18 U.S.C. § 1951, one count of using, carrying, possessing and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).  (Indictment, Doc. No. 1.)  Roberts' co-

defendant was also charged in the first two counts—interference with commerce by robbery and using, carrying, possessing and brandishing a firearm during and in relation to a crime of violence. (*Id.*) Roberts pled guilty to Counts 1 and 2 on April 22, 2011. (Doc. Nos. 62, 63, 109.) Roberts was sentenced on December 14, 2011, to 108 months' imprisonment on Count 1, and 84 months' imprisonment on Count 2, with the sentences to be served consecutively. (Doc. Nos. 84, 86, 92.) Following incarceration, Roberts was sentenced to a term of 5 years' supervised release. (Doc. Nos. 84, 86, 92.)

Roberts is currently 32 years old and serving his sentence in Forrest City Medium FCI in Forrest City, Arkansas. Inmate Locator, *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited October 22, 2020). Roberts has a projected release date of December 30, 2024. (*Id.*) To date, Roberts has served over 9.5 years in prison, approximately 70% of his total sentence. (*See* Doc. No. 161 at 6.)

Presently, Forrest City Medium FCI has 3 COVID-19 positive inmates, 15 positive staff, zero inmate or staff deaths, 103 recovered inmates, and 5 recovered staff. Federal Bureau of Prisons, <u>COVID-19: Coronavirus</u>, https://www.bop.gov/coronavirus/ (last visited Oct. 23, 2020). At the time of filing on September 3, 2020, Forrest City Medium FCI was enduring a COVID-19 outbreak with 51 infected inmates and 11 infected staff members. (Doc. No. 150 at 8.) Forrest City Medium FCI was at a 9.6% infection rate as of September 30, 2020. (Doc. No. 161 at 12 n.3.) BOP statistics state that Forrest City Medium FCI has tested, to date, 1069 inmates for COVID-19, with 111 of those inmates testing positive and five test results remain outstanding. *Id.*

Roberts suffers from Grave's Disease, including symptoms of dyspnea, as well as hypertension and gastro-esophageal reflux disease. (Doc. No. 151-5 at 1–2.) Roberts uses a CPAP machine. (*See* Doc. No. 151-5 at 19.) Roberts has an elevated A1C hemoglobin level, placing him at increased risk for diabetes; but he has not been diagnosed with diabetes. (Doc. No. 151-5 at 8.)

Shortly after Roberts began serving his sentence, while incarcerated in February 2012 at USP Leavenworth, he was raped by two inmates at knifepoint. (Doc. No. 151-2.) He was eventually transferred to another prison after spending some time in solitary confinement. (*See id.*)

On September 24, 2014, Roberts was incarcerated in Atlanta, Georgia where a BOP facilities staff member, K.R., suffered a medical emergency and passed out alone in the recreation area. (Doc. No. 151-1 at 1, 6.) Roberts aided by calling for help via K.R.'s radio then performed CPR on K.R. until help arrived. (*Id.* at 1, 6.) Roberts' unit counsel, T. Carmicheal, wrote that Roberts' "simple act of kindness" opened him up for negative responses and retaliation from other prisoners, "up to possibly being murdered or seriously assaulted." (*Id.* at 6.) Carmicheal continued: Roberts' "act of compassion is a clear reflection on his character." (*Id.*) Roberts was awarded a $100 Special Act Award. (*Id.*)

Roberts has completed an extensive amount of coursework and programming in prison. (*Id.* at 2; Doc. No. 151-3 at 1–23.) Roberts has worked many jobs while incarcerated and has helped "others learn basics with every day skills." (Doc. No. 151-1 at 3.) The BOP, via Roberts' Correctional Treatment Specialist/Case Manager, uses

Roberts "to talk with new young offenders to help them understand [prison] rules, help them learn how to program, and remain incident report free." (*Id.*) Roberts "has kept some younger offenders out of trouble by explaining to them how taking a few minutes to cool off before reacting is valuable. They have learned that anger is one of the issues that has caused them to be in prison." (*Id.*) As the BOP states: Roberts "has proven himself reliable, trustworthy, honest, honorable, and to have good character." (*Id.*) The BOP believes "Roberts will have a good chance to remain trouble free" if released. (*Id.*) While Roberts has some disciplinary incidents from his incarceration, the BOP states "[h]e has a better than average Institutional Record[1] than most people releasing from prison" and Roberts is not expected to be re-incarcerated upon release. (*Id.* at 4.)

Roberts has support from family and community should he be granted release. (Doc. No. 151-4 at 1–5; Doc. No. 151-1 at 4.) He has coordinated employment with a catering company. (Doc. No. 151-4 at 1; Aff. of Terry Roberts Sr. ¶ 4 Doc. No. 155.) Roberts will also seek construction work based on skills he learned while incarcerated. (Roberts Sr. Aff. ¶ 3.) Roberts would live with his father, Terry Roberts, Sr., in Brooklyn Center, Minnesota upon release. (Roberts Sr. Aff. ¶¶ 2, 5.) Roberts' daughter was living

---

[1]  The Government has provided Roberts' disciplinary record. (Doc. No. 160-2.) Roberts' had incidents on: April 9, 2014 (fighting with another person); May 16, 2014 (phone abuse – disrupt monitoring); June 14, 2015 (possessing unauthorized item, possessing a non-hazardous tool); June 24, 2015 (being absent from assignment); April 26, 2017 (engaging in sexual act); September 1, 2017 (refusing work/program assignment, refusing to obey an order); October 26, 2017 (being in unauthorized area); December 20, 2017 (possessing a hazardous tool); January 8, 2018 (refusing to obey an order); March 29, 2018 (refusing work/program assignment); March 30, 2018 (refusing work/program assignment); and April 5, 2018 (refusing work/program assignment). There are no recorded incidents since April 2018.

with her mother, but her mother passed in August 2019, so she has moved several times. (Roberts Sr. Aff. ¶ 6.) Roberts' daughter would live with Roberts and Roberts' father (her grandfather) should Roberts be released. (Roberts Sr. Aff. ¶ 6.)

Roberts seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) on the grounds that his health conditions during the COVID-19 pandemic while incarcerated place him in heightened danger, that he has undertaken significant rehabilitation while incarcerated, and that he saved the life of a Bureau of Prisons staff member. Roberts asserts these add up to extraordinary and compelling circumstances to justify modification of his term of imprisonment. The Government opposes.

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).[2] Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13, cmt. n.1(a)(ii).

Roberts is immunocompromised by reason of suffering from Grave's Disease, an immune system disorder. While the CDC does not specifically list Grave's Disease as a possible risk factor for severe illness in event of COVID-19 contraction, it does indicate

---

[2] There is no dispute that Roberts exhausted the administrative process prior to bringing the instant motion. (*See* Doc. No. 151-6.)

that persons in an immunocompromised state, such as those with immune deficiencies, might be at increased risk.³  Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Oct. 23, 2020).  The CDC lists a spate of breathing-related ailments—e.g., asthma and COPD—that raise concerns with respect to COVID-19 infection.  Id.  Roberts has a documented history of dyspnea symptoms resulting from his Grave's Disease.  Further, the CDC indicates that persons with hypertension, like Roberts, are at increased risk from COVID-19.  Roberts' immunocompromised status, shortness of breath resulting from Grave's Disease, and his hypertension, in conjunction with being incarcerated at Forrest City Medium FCI which has experienced significantly elevated COVID-19 infection rates, is a sufficient medical condition to constitute an extraordinary and compelling reason for this Court to reconsider his sentence.

      The Court must next consider whether the general sentencing factors in § 3553(a) warrant a reduction in sentence.  The conduct for which Roberts was charged involved

---

³     The American Thyroid Association notes that the CDC advises immunocompromised persons are at higher-risk for severe illness from COVID-19, but notes "the immune system is complex, and having autoimmune thyroid disease does not mean that a person is immunocompromised or will be unable to fight off a viral infection."  Am. Thyroid Assoc., Novel Coronavirus (COVID-19) and the Thyroid: Frequently Asked Questions, https://www.thyroid.org/covid-19/coronavirus-frequently-asked-questions/#hypothyroidism (last accessed Oct. 23, 2020).  The American Thyroid Association goes on to caution persons with Grave's Disease that they should continue to practice CDC safety guidelines.  Id.

armed robbery from a convenience store, but the Court considered a spree of one dozen robberies at sentencing ranging several months. The Court does not minimize the deleterious effect Roberts' crimes had upon his victims and the community. This is why Roberts was sentenced to 16 years' imprisonment. But Roberts has served almost 10 years in prison; approximately one-third of his life and nearly his entire adult life. He has completed extensive programming and he serves as a mentor to younger inmates to ease their transition into the prison system. He has had no disciplinary problems in over 2.5 years. Roberts saved a BOP staff member's life, risking his very own life in the process. To reiterate: Roberts saved a BOP staff member's life after facing institutional indifference to the brutal rape he suffered under BOP supervision only years prior. Roberts' selfless assistance is admirable and demonstrates remarkable rehabilitation. But the Court need not generate its own praise, the BOP has done that already: Roberts' "simple act of kindness" opened him up for negative responses and retaliation from other prisoners, "up to possibly being murdered or seriously assaulted." (Doc. No. 151-1 at 6.) His "act of compassion is a clear reflection on his character." (*Id.*) Roberts "has proven himself reliable, trustworthy, honest, honorable, and to have good character." (*Id.* at 3.)[4]

---

[4] The Government, with no supporting basis, tells the Court it should take the BOP Correctional Treatment Specialist's statements "with a grain of salt" in light of Roberts' prison misconduct. (Doc. No. 161 at 14 n.4.) The BOP Correctional Treatment Specialist wrote about Roberts with full knowledge of his disciplinary record and actually referenced it. (Doc. No. 151-1 at 4 (stating Roberts "has a better than average Institutional Record than most people releasing from prison" and Roberts is not expected to be re-incarcerated upon release due to supervised release violations).) The Court will not discount these statements absent more than the mere urging of the prosecutor. The BOP Correctional Treatment Specialist has interacted with Roberts regularly by reason of his position and has ample authority to speak towards Roberts' *present* character.

7

Simply put, Roberts no longer poses the same danger to the community that he did at the time of sentencing in December 2011. All current indicators point towards Roberts becoming an asset to his daughter, family, and community, rather than a burden. The § 3553(a) factors warrant a reduction in Reed's sentence to time served.

To ensure Roberts' health and safety upon release, including appropriate healthcare in light of Roberts' medical conditions and allowing for any potential quarantine, the Court authorizes the BOP to follow its own internal procedures to coordinate Roberts' release provided that he is released within 21 days of this Order.

## CONCLUSION

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Terry Lamar Roberts' Motion to Modify Sentence of Imprisonment. (Doc. No. [149]) is **GRANTED**;

2. Roberts' sentence of 192 months' imprisonment is **REDUCED** to time served under 18 U.S.C. § 3582(c)(1)(A);

3. Roberts shall be placed on supervised release and the Court re-imposes the terms and conditions of supervised release as set forth in the Judgment (Doc. No. 86), with the following amendments:

    a. Roberts shall begin his supervised release by serving up to 180 days in home detention at his father's home;

---

Moreover, during the Court's nearly 22 years on the Federal Bench, it may have received one other letter like this out of hundreds of communications it has had with the BOP.

       b.       During home detention, Roberts shall be restricted to his residence at all times except for: employment; education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the probation officer; and

       c.       In its discretion, the United States Probation Office may utilize appropriate location monitoring technology to ensure Roberts' compliance with home incarceration; and

4.       The execution of this Order may be stayed for up to ten days to allow the Bureau of Prisons and the U.S. Probation Office to make the necessary arrangements for Roberts' release, provided that Roberts is ultimately released within 21 days of this Order.

Dated: October 26, 2020                    s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge